

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-09-122-CV

SAM L. SHIPLEY AND                                                    APPELLANTS
CYNTHIA D. SHIPLEY

V.

HOLT TEXAS, LTD D/B/A                                                 APPELLEES
HOLT CAT, A TEXAS
LIMITED PARTNERSHIP; AND
CATERPILLAR, A DELAWARE
CORPORATION

------------

### FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellants Sam L. Shipley and Cynthia D. Shipley appeal from a take-nothing

judgment entered on a jury verdict against them and in favor of Appellees Holt

Texas, LTD d/b/a Holt Cat, a Texas limited partnership; and Caterpillar, a Delaware

---

[1] *See* Tex. R. App. P. 47.4.

corporation. The Shipleys sued Appellees for design and marketing defects in the 930G Caterpillar wheel loader. Sam suffered severe injuries when he made an emergency exit from the cab of his 930G Caterpillar, and the Shipleys alleged that the ladder, which was over five feet off the ground and provided ingress and egress from the cab of the vehicle, was defectively designed and marketed. The Shipleys raise six issues on appeal. For the reasons set forth below, we will affirm the trial court's judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Overview of the Trial

The Shipleys sued Appellees, asserting design defect and marketing defect causes of action concerning the ladder assembly on the 930G Caterpillar wheel loader. Sam was driving his 930G Caterpillar on his ranch in Granbury when he disturbed a hive of bees. He was unable to shut the cab doors quickly enough and was totally covered with bees. Sam knew of a nearby creek and decided to exit the cab and lie in the creek to escape the bees. The cab of the 930G Caterpillar is five feet high, and a ladder assembly is attached to the machine for ingress and egress. Sam exited the cab with his back to it.

Sam testified that he could not see because of the bees, so he squatted down on the platform outside the cab and reached out with his right foot to feel for the top step of the ladder. When he did not feel anything, he tried again, "raking" his right foot back to find the ladder. When his foot landed on something solid, he either

2

attempted to step to the next step, lost his balance and fell, or simply jumped. But, in any event, Sam testified that his right foot became wedged in a gap behind the top ladder step and that when he moved forward (whether by stepping, falling, or jumping), his right lower shin snapped in two as he hit the ground face-first. Sam tried to stand but was unable to; he crawled back into the cab, drove the 930G Caterpillar to a higher location where he knew he could receive cell phone service, and called 911. Sam's right leg was ultimately surgically amputated below the knee.

For the trial, Sam's 930G Caterpillar was brought to the courthouse and was parked in the sally port. During trial, the jury, along with the trial court judge and the lawyers, were permitted to view Sam's 930G Caterpillar. Eventually, after a six-day trial involving eighteen witnesses, the case was submitted to the jury.

### B. Appellees' Expert Testimony

Appellees presented expert testimony from biomechanical expert Dr. Mike Scott that Sam's foot could not have become wedged in the gap behind the ladder's first rung but that Sam's injury was consistent with a fall or a jump from the 930G Caterpillar's cab, in which he landed right-foot-first with a fully-pronated ankle. Appellees also presented the expert testimony of Mr. Ronald Brass. Mr. Brass testified concerning Caterpillar's design team's consideration of the ISO[2] and SAE[3] standards and opined that the 930G Caterpillar's ladder design was reasonably safe.

---

[2] ISO is the International Standards Organizatoin.

[3] SAE is the Society of Automotive Engineers.

3

## C. The Jury Deliberations

After retiring to deliberate, the jury sent out a note asking if it could again view Sam's 930G Caterpillar. The trial court responded with a note answering, "[N]o." At some point later in the deliberations, the jury attempted to view two DVDs on the court-provided DVD player in the jury room. The only two DVDs offered into evidence during trial were a DVD of Mr. Brass utilizing the ladder to enter and exit the cab of a 930G Caterpillar and a DVD containing x-rays and CAT scans documenting Sam's injuries, including the fractures to his right leg. Because of a tripped breaker switch, the DVD player in the jury room was inoperable during the jury's deliberations. The jury was unable to review the DVDs. Eventually, the jury returned a ten-to-two defense verdict, answering "no" to the design defect and marketing defect questions submitted in the court's charge.

## D. The Shipleys' Motion for New Trial

The Shipleys filed a motion for new trial asserting that the inoperable DVD player in the jury room prevented the jury from performing its essential function of reviewing the evidence and, consequently, was an outside influence on the jury constituting jury misconduct. The Shipleys attached the affidavits of three jurors to their motion for new trial. Each affidavit stated that, upon retiring to the jury room, the jury's first vote on Question One (the design defect question) had been six to six. Each affidavit stated that the jury had tried to play two DVDs in the court-provided

4

DVD player in the jury room but had been unable to view the DVDs because the DVD player was inoperable.

The trial court conducted a hearing on the Shipleys' motion for new trial. The three jurors who had provided affidavits and the trial court's court coordinator, Ms. Weisand, all testified at the hearing. The jurors testified to the same matters set forth in their affidavits and confirmed that the jury's attempted use of the DVD player occurred after the jury had been told that they could not view Sam's 930G Caterpillar again. Ms. Weisand testified that it was her job was to make sure that the DVD player was operable, that a fuse had blown in the jury room, that the DVD player was not operable during the jury's deliberations, and that, subsequently, she had called maintenance to fix the electrical problem.

After hearing the evidence presented by the Shipleys, the trial court stated on the record,

> We never heard a word from the jury about whether or not there was some mechanical breakdown in the jury room that was preventing them from seeing some aspect of the evidence. You know, had that been communicated, there likely would have been some responsive recognition by the Court to that and—and an effort made to resolve those problems, but that—that was never brought to the Court's attention.

The trial court overruled the Shipleys' motion for new trial. The Shipleys perfected this appeal.

### III. JURY MISCONDUCT NOT ESTABLISHED

5

In their first issue, the Shipleys argue that they were deprived of a fair trial because the DVD player in the jury room was inoperable during the jury's deliberations and the jury twice attempted to use it to view two DVDs.[4] Thus, the Shipleys argue that the trial court abused its discretion by not granting their motion for new trial based on jury misconduct.

To warrant a new trial for jury misconduct, the movant must establish (1) that the misconduct occurred, (2) that it was material, and (3) that it probably caused injury. *See Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 372 (Tex. 2000). Whether misconduct occurred and caused injury are questions of fact for the trial court. *See id.* (holding that "whether misconduct occurred and caused injury is a question of fact for the trial court"); *Pharo v. Chambers County*, 922 S.W.2d 945, 948 (Tex. 1996). Misconduct justifies a new trial only if it reasonably appears from the record that injury probably resulted to the complaining party. *Id*. at 950; *see* Tex. R.

---

[4] The Shipleys also assert another basis for jury misconduct on appeal. They contend that the tripped breaker also caused the jury room to become extremely hot and that the heat constituted an outside influence on the jury. But this argument was not set forth in their motion for new trial nor supported by affidavit. *See* Tex. R. Civ. P. 327(a) (requiring ground for jury misconduct to be set forth in motion for new trial and supported by affidavit). The Shipleys questioned the jurors who testified at the motion for new trial hearing about the temperature in the jury room, but this questioning alone was insufficient to have preserved this contention for our review on appeal. *See* Tex. R. Civ. P. 324(b)(1) (requiring jury misconduct to be raised in a point in a motion for new trial). Nor does the Shipleys' contention that the inoperable DVD player was an outside influence constituting jury misconduct preserve the heat-related complaint they assert on appeal because the complaint preserved in the trial court must comport with the complaint asserted on appeal. *See* Tex. R. App. P. 33.1(a). Consequently, we do not address the merits of this argument that the Shipleys raise as part of their first issue.

6

Civ. P. 327(a) (providing trial court may grant a new trial based on jury misconduct only if "it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party"). Absent findings to the contrary, we must assume that the trial court made all findings in support of its decision to deny the motion for new trial. *See id.* We review a trial court's denial of a motion for new trial based on jury misconduct for abuse of discretion. *Pharo*, 922 S.W.2d at 948–49; *Mercado v. Warner-Lambert Co.*, 106 S.W.3d 393, 396 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

The Shipleys established that, at some point after the trial court told the jury that it could not again view Sam's 930G Caterpillar, the jury twice attempted to view DVDs admitted into evidence on the court-provided DVD player and that the DVD player was inoperable. The Shipleys point out that the only evidence admitted via DVDs was of Mr. Brass entering and exiting the cab of a 930G Caterpillar via its ladder (Exhibit 35) and of x-rays and CAT scans of Sam's injuries—including his right leg (Exhibit 645).[5] They argue that all of this evidence was critical, especially

---

[5] The Shipleys' counsel utilized, as demonstrative evidence during closing argument, a DVD animation of how Sam contends that his right foot became lodged behind the top step of the ladder. But during oral argument, the Shipleys' counsel explained that this DVD was not ever introduced into evidence and therefore was not sent to the jury room. Additionally, the Shipleys' counsel explained during oral argument that Exhibit 42, a DVD of Sam driving his 930G Caterpillar, was likewise not admitted into evidence. Thus, the only two DVDs possibly at issue here are the two mentioned above, Exhibits 35 and 645.

in light of the trial court's ruling that the jury could not again go view Sam's 930G Caterpillar in the sally port.

For purposes of our analysis, we will assume that the inoperable DVD player in the jury room constituted an outside influence on the jury that may be characterized as jury misconduct.[6]  For the reasons set forth below, we hold that, even assuming jury misconduct, the jury's inability to view the two DVDs—Exhibit 35 and Exhibit 645—was not calculated to cause nor did it cause the rendition of an improper verdict.

Exhibit 35 is a DVD offered into evidence by the defense.  We have reviewed it, and as mentioned previously, it shows one of the defense experts, Mr. Brass, entering and exiting the cab of a 930G Caterpillar.  As he exits, Mr. Brass faces away from the cab, as Sam testified he had exited the cab.  Mr. Brass squats slightly on the platform ledge above the ladder and rakes his right foot back, as Sam

---

[6]⬆ We note that this scenario seems more likely a possible violation of rule 281 of the rules of civil procedure, which states that "the jury may, and on request shall, take with them in their retirement . . . any written evidence."  Tex. R. Civ. P. 281.  Despite the permissive language of the rule—"may, and on request shall"—the supreme court has held not only that the rule is mandatory, but also that it "is self-operative and requires no request from the jurors or counsel."  *First Employees Ins. Co. v. Skinner*, 646 S.W.2d 170, 172 (Tex. 1983).  If the rule is violated, we then review the record for harm.  *See id.* at 172–73 (reviewing court is to evaluate whole case to determine whether denying jury opportunity to examine exhibits "was reasonably calculated to cause and probably did cause the rendition of an improper judgment"); *Formosa Plastics Corp., USA v. Kajima Int'l, Inc.*, 216 S.W.3d 436, 464 (Tex. App.—Corpus Christi 2006, pet. denied); *Cruz v. Hinojosa*, 12 S.W.3d 545, 550 (Tex. App.—San Antonio 1999, pet. denied); *see also* Tex. R. App. P. 44.1(a)(1); Tex. R. Civ. P. 281.  Thus, the harm analysis that we apply is the same whether the alleged error is a violation of rule 281 or jury misconduct.

8

testified he had done. Mr. Brass attempts to jiggle his right heel into the gap behind the top ladder rung, but he is unsuccessful. Thus, this DVD supports the defense theory that Sam's right foot did not become lodged behind the top rung of the ladder but that, instead, Sam simply jumped from the platform and landed right-foot-first with his ankle in a fully-pronated position.

Exhibit 645 is a CD containing all of Sam's x-rays and CAT scans, including those of his right foot and leg. We have reviewed the CD. It was made to be viewed on a computer, and during oral argument the Shipleys' counsel conceded that the CD might not be viewable on a DVD player at all. We have throughly reviewed the record, and the nature of Sam's fracture to his right leg was conclusively established. That is, neither side disputed the type of fracture that Sam had suffered. The dispute at trial was over what caused the fracture—Sam's right foot becoming trapped behind the top rung of the ladder and being fractured when he fell face-first to the ground, or Sam jumping and landing with all of his weight on his right foot and with his right ankle in a fully-pronated position. Additionally, several exhibits, diagrams, and x-rays were introduced into evidence separately, apart from the CD marked as Exhibit 645. The Shipleys' medical expert, Dr. Richard Schuster, who was also Sam's orthopedic surgeon, testified for the Shipleys extensively concerning Exhibit 643, 1–4, which are x-rays and parts of CAT scans of Sam's right leg and ankle. These exhibits were sent to the jury room with the jury.

9

In light of the evidence presented at trial, presented at the motion for new trial hearing, and contained in the record before us as a whole, and assuming the trial court made all fact findings in support of its denial of the Shipleys' motion for new trial, it does not reasonably appear that the Shipleys were injured by the jury's inability to view Exhibits 35 and 645 during their deliberations. *See Golden Eagle Archery*, 24 S.W.3d at 372. Nothing in the record indicates that any juror would have voted differently if he or she had been able to again view the DVD of a defense expert entering and exiting the cab of a 930G Caterpillar via the attached ladder or had again been able to view Sam's x-rays and CAT scans on the DVD player (if this disc is even viewable on a DVD player instead of a computer), especially when x-rays and CAT scans discussed and explained by Sam's treating orthopedic surgeon were admitted into evidence separately and were sent to the jury room. *See Pharo*, 922 S.W.2d at 950. The evidence in the record on the issue of how Sam's right-leg fracture occurred was hotly contested; the evidence on the merits of this issue did not so heavily favor the Shipleys that a tainted verdict can be inferred. *See id.*; *see also Losier v. Ravi*, No. 14-08-00399-CV, 2009 WL 3365867, at *9 (Tex. App.—Houston [14th Dist.] Sept. 10, 2009, no pet.) (holding that "[o]n this record, we conclude that the evidence does not rise to the level required to presume injury for purposes of Rule 327(a)"); *Sharpless v. Sim*, 209 S.W.3d 825, 828–29 (Tex. App.—Dallas 2006, pet. denied) (holding jury misconduct by juror who conducted her own independent investigation on internet but did not convey information to

entire jury, was not the type of act that is "sufficiently prejudicial to justify a presumption of harm"). We cannot say that the trial court's implied findings do not support the conclusion that—even assuming jury misconduct occurred via the inoperable DVD player in the jury room—the Shipleys were probably not injured by this alleged misconduct. *See Pharo*, 922 S.W.2d at 950; *see also Hunter v. Ford Motor Co.*, 305 S.W.3d 202, 8–9 (Tex. App.—Waco 2009, no pet.) (holding that even assuming jury misconduct, the new trial movant "cannot show that injury probably resulted from the misconduct"); *Strauss v. Cont'l Airlines, Inc.*, 67 S.W.3d 428, 447–48 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (holding record did not show injury from misconduct). We hold that the trial court did not abuse its discretion by denying the Shipleys' motion for new trial based on jury misconduct.

We overrule the Shipleys' first issue.

## IV. CHALLENGES TO ADMISSION OF DEFENSE EXPERT TESTIMONY WERE WAIVED

In their second and third issues, the Shipleys argue that the trial court erred by admitting the testimony of defense experts Dr. Scott and Mr. Brass because their opinions were not legally reliable, had not been subjected to scientific testing, were contrary to established findings in a widely-accepted legal treatise, and were contrary to written industry standards. As pointed out by Appellees, however, the Shipleys read portions of Dr. Scott's and Mr. Brass's depositions to the jury in their case-in-chief. And the deposition excerpts read to the jury contain the same

11

information that the Shipleys claim on appeal should not have been admitted. Consequently, the Shipleys have waived any error in the introduction of testimony that they offered into evidence. *See, e.g.*, *McInnes v. Yamaha Motor Corp., U.S.A.*, 673 S.W.2d 185, 188 (Tex. 1984), *cert. denied*, 469 U.S. 1107 (1985); *Halim v. Ramchandani*, 203 S.W.3d 482, 492–93 (Tex. App.—Houston [14th Dist.] 2006, no pet.). We overrule the Shipleys' second and third issues.

## V. DENIAL OF DIRECTED VERDICT

In their fourth issue, the Shipleys argue that the trial court erred by failing to grant their motion for a directed verdict on Question One in the court's charge. Question One asked, "Was there a design defect in the Caterpillar 930G loader in question at the time it left the possession of Caterpillar, Inc. that was a producing cause of the injury in question?"

A directed verdict is proper only under limited circumstances: (1) when the evidence conclusively establishes the movant's right to judgment or negates the opponent's right, or (2) when the evidence is insufficient to raise a material fact issue. *See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Farlow v. Harris Methodist Fort Worth Hosp.*, 284 S.W.3d 903, 919 (Tex. App.—Fort Worth 2009, pet. denied). In reviewing whether the evidence is sufficient to raise a fact issue, we apply the standards for assessing the legal sufficiency of the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 809–28 (Tex. 2005); *see also Exxon Mobil Corp. v. Kinder Morgan Operating L.P. "A"*, 192

12

S.W.3d 120, 126 (Tex. App.—Houston [14th Dist.] 2006, no pet.). If there is any evidence of probative force to raise a fact issue on the question presented, a directed verdict is improper. *See, e.g.*, *Bostrom Seating, Inc. v. Crane Carrier Co.*, 140 S.W.3d 681, 684 (Tex. 2004); *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994).

Here, viewing all of the evidence in the light most favorable to the trial court's ruling denying the Shipleys' motion for directed verdict on Question One, the Shipleys did not conclusively establish their right to judgment on this question; probative evidence existed raising fact issues concerning Question One. Specifically, fact issues existed concerning whether a design defect was a producing cause of Sam's injuries.

The defense's theory of the case was that even if a design defect existed, it was not a producing cause of any injury to Sam because he did not use the allegedly defective ladder to exit his 930G Caterpillar but simply jumped or fell from the cab to escape the swarm of bees. There is probative evidence in the record to support this theory. It is undisputed that Sam could not see because of the bees; the defense experts theorized that Sam leapt or fell five feet from the truck's cab to the ground, landing on his right foot with a fully-pronated ankle, shattering his right leg bones. Because the Shipleys did not conclusively establish that any design defect in the 930G Caterpillar's ladder was a producing cause of Sam's injuries, the trial court did not err by denying their motion for directed verdict on Question One. *See,*

13

*e.g., City of Emory v. Lusk*, 278 S.W.3d 77, 84 (Tex. 2009) (holding trial court did not err by denying motion for directed verdict when moving party did not prove fact as a matter of law).

We overrule the Shipleys' fourth issue.

## VI. Alleged Improper Argument by Defense Counsel

In their fifth issue, the Shipleys contend that Appellees' counsel made repeated, incurable comments during his closing argument. Specifically, the Shipleys claim that Appellees' counsel "leveled personal attacks against plaintiffs' counsel and repeatedly accused plaintiffs' counsel of calling [Appellees' counsel] and the defense witnesses 'liars.'" Appellees argue that this complaint is not preserved for our review.

We have thoroughly reviewed the record of closing arguments from both sides. The Shipleys' counsel argued during closing argument that Appellees had told the jury things that were not true. Appellees' counsel began his closing argument by stating,

> I've worked with [Shipleys' counsel] now for the better part of two years, and I kind of consider him a friend. He's a nice guy. And he has never once called me a liar until this trial. I've never been in a courtroom where another lawyer has called me a liar, and I'm going to look at you in your eyes and I'm going to tell you that I am not a liar.

The Shipleys did not object.

Generally, to obtain reversal on the basis of improper jury argument, an appellant must prove (1) an error; (2) that was not invited or provoked; (3) that was

14

preserved by the proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial; and (4) that was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge. *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839 (Tex. 1979). Having failed to object the first time that defense counsel characterized the Shipleys' counsel's argument as accusing him of being "a liar," the Shipleys have waived any error from similar arguments made by defense counsel. And the only time the Shipleys asserted an objection to the argument of defense counsel, they did not request a curative instruction by the trial court.[7] Nor did the Shipleys raise this alleged jury argument error in their motion for new trial. Consequently, this claimed error is not preserved for our review unless it is incurable. *See Reese*, 584 S.W.2d at 840 (explaining jury argument error was waived because "[t]here was no objection to the first argument about which he now complains; there was no motion to instruct as to either of the two arguments"); *Phillips v. Phillips*, 296 S.W.3d 656, 674 (Tex. App.—El Paso 2009, pet. denied) (holding alleged jury argument error waived for failure to object); *accord Cottman Transmission Sys., L.L.C. v. FVLR Enters., L.L.C.*, 295 S.W.3d 372, 380 (Tex.

---

[7] The Shipleys asserted several "misstatement of the law" and "misstatement of the evidence" objections during defense counsel's closing argument but made only one objection asserting that defense counsel's argument constituted an attack on the Shipleys' counsel. The Shipleys' counsel objected, stating, "Objection, Your Honor, misstating the argument. I never said, 'Liar' to—about Mr. Howell. That's just wrong. Move to strike all that."

App.—Dallas 2009, pet. denied) (holding unobjected-to, allegedly-improper jury argument error was preserved via a motion for new trial).

Incurable jury argument error may be raised on appeal even though no timely objection was asserted in the trial court. *Living Ctrs. of Tex., Inc. v. Penalver*, 256 S.W.3d 678, 681 (Tex. 2008). Incurable jury argument is rare. *Id*. For an argument to be considered incurable, the complaining party must not have invited or provoked the improper argument. *Id*. The party claiming incurable harm must persuade the court that, based on the record as a whole, the offensive argument was so extreme that a "juror of ordinary intelligence could have been persuaded by that argument to agree to a verdict contrary to that to which he would have agreed but for such argument." *Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009) (quoting *Goforth v. Alvey*, 153 Tex. 449, 450, 271 S.W.2d 404, 404 (1954)).

Here, the Shipleys' counsel invited the comments that he now contends were improper. The Shipleys counsel argued,

> Why didn't he [Appellees' counsel] get up to show their primary defense, other than jumping, offer evidence and be cross examined by me - - I wouldn't want to be cross examined by me - - that this is the only incident? No, they just want you to take their word for it. These same witnesses, who will tell you they have never heard - - Mr. Niemeier being one of them - - he's never even heard of anyone, even a kid at a swimming pool, (indicating) going down, standing on a ladder backwards, right? *These are the same people who've told you many things that aren't true.* [Emphasis added.]

Alternatively, if the Shipleys' counsel did not invite or provoke Appellees' counsel's arguments that neither he nor his witnesses were liars, we hold that these

16

arguments nonetheless did not interject incurable harm into the trial. *But see Penalver*, 256 S.W.3d at 681 (holding arguments comparing defense counsel to the Nazis were incurable). Appellees' counsel's characterization of the Shipleys' counsel's argument as accusing him and his witnesses of being liars was not, based on the record as a whole, such an extreme argument that a juror might have been persuaded to agree to a verdict contrary to that which the juror would have agreed to but for the argument. *See Bramlett*, 288 S.W.3d at 883. Nor did these comments strike at the very core of the judicial process. *See id.* Thus, we alternatively hold that, in any event, Appellees' counsel's arguments were not incurable.

We overrule the Shipleys' fifth issue.

## VII. THE SHIPLEYS' MOTION FOR COSTS OF PROOF

In their sixth issue, the Shipleys argue that the trial court erred by denying their post-judgment motion for reimbursement of the costs they incurred in proving that the 930H Caterpillar's "black ladder" was a safer alternative design than the ladder on the 930G Caterpillar. The Shipleys propounded a request for admission to Appellees, asking them to admit this fact, but Appellees denied it. The Shipleys argue that rule of civil procedure 215.4(b) required the trial court to enter an order awarding them the costs that they incurred in proving this fact.

Rule 215.4(b) provides,

*Expenses on Failure to Admit*. If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 198 and if the party requesting the admissions thereafter proves the

17

genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney fees. The court shall make the order unless it finds that (1) the request was held objectionable pursuant to Rule 193, or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had a reasonable ground to believe that he might prevail on the matter, or (4) there was other good reason for the failure to admit.

Tex. R. Civ. P. 215.4(b).

As previously mentioned, Question One asked the jury whether a design defect existed in the Caterpillar 930G loader in question at the time it left the possession of Caterpillar that was a producing cause of the injury in question. "Design defect" was defined using the term "safer alternative design," and "safer alternative design" was also defined in connection with Question One. "Safer alternative design" was defined as

a product design other than the one actually used that in reasonable probability (1) would have prevented or significantly reduced the risk of the injury in question without substantially impairing the product's utility; and (2) was economically and technologically feasible at the time the product left the control of Caterpillar, Inc. by the application of existing or reasonably achievable scientific knowledge.

Based on the evidence presented at trial, the jury could have determined there was no "safer alternative design" under the definition provided to it in the charge. The jury could have believed that Sam jumped from the cab of his 930G Caterpillar or from its top ladder step and that, therefore, no other design "would have prevented or significantly reduced the risk of the injury in question." Accordingly,

18

Appellees possessed a reasonable ground to believe that they might prevail on the issue of whether a safer alternative design existed in these circumstances, and in fact, they may have prevailed on that issue since the jury answered "no" to Question One.

We overrule the Shipleys' sixth issue.

## VIII. CONCLUSION

Having overruled each of the Shipleys' issues, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: DAUPHINOT, WALKER, and MCCOY, JJ.

DELIVERED: May 20, 2010