Benny P. PHILLIPS, M.D., Petitioner,

v.

Dale BRAMLETT, individually and as Independent Administrator of the Estate of Vicki Bramlett, Deceased, Shane Fuller, and Michael Fuller, Respondents.

No. 07–0522.

Supreme Court of Texas.

Argued April 22, 2008.

Decided March 6, 2009.

Rehearing Denied Sept. 28, 2009.

Jim Hund, Hund, Krier, Wilkerson & Wright, John Simpson, Splawn Simpson Pitts, Inc., Dennis R. Burrows, Benjamin H. Davidson II, McClesky Harriger Brazil & Graf, L.L.P., Lubbock, for Petitioner.

John Smithee, Templeton Smithee Hayes Heinrich & Russell, L.L.P., Amarillo, Thomas J. Turner, Turner and Jordan, P.C., Lubbock, Joseph Todd Trombley, Alexander B. Klein III, The Klein Law Firm, Houston, for Respondents.

Justice MEDINA delivered the opinion of the Court, in which Justice WAINWRIGHT, Justice BRISTER, Justice JOHNSON, and Justice WILLETT joined.

We granted the petition for review in this case to consider the relationship between two provisions of the Medical Liability and Insurance Improvement Act of 1977, now repealed. *See* Tex.Rev.Civ. Stat. art. 4590i.[1] The first provision caps the liability of physicians (and other health care providers) above a fixed amount, adjusted for inflation, while the second creates an exception to this cap when the physician's insurer has negligently failed to settle within the meaning of the Stowers Doctrine, that is, has negligently failed to settle a claim within the limits of the physician's liability policy.

The trial court here applied the Stowers exception to permit the rendition of a judgment against the physician in excess of the

---

1. Act of June 16, 1977, 65th Leg., R.S., ch. 817, § 11.02, 1977 Tex. Gen. Laws 2039, 2052 (formerly Tex.Rev.Civ. Stat. art. 4590i).

Article 4590i was repealed by Act of June 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884.

statutory cap. The court of appeals, in a divided decision, affirmed, concluding that the excess judgment was permissible because there was evidence that the insurer negligently failed to settle the claim against its insured, the physician. 258 S.W.3d 158. In other words, the court concluded that the statutory Stowers exception waived the liability cap for both the insurer and the insured physician. We disagree that this exception applies to the physician and accordingly reverse the court of appeals' judgment and remand the case to the trial court.

## I

Vicki Bramlett, a healthy 36–year–old mother of two, died from post-operative complications following a hysterectomy. The procedure was performed at Covenant Medical Center in Lubbock by Dr. Benny Phillips. Bramlett's survivors sued Dr. Phillips and the medical center, alleging negligence in her care and treatment. The medical center settled for $2.3 million; the case against the doctor proceeded to trial.

A jury found the doctor and medical center negligent, awarding $11 million in damages and apportioning responsibility, seventy-five percent to the doctor and twenty-five percent to the medical center. The jury also found the doctor grossly negligent, awarding $3 million in punitive damages. The trial court rendered judgment against the doctor after crediting the medical center's settlement. The trial court also denied the doctor's request to limit his liability under the Medical Liability and Insurance Improvement Act of

1977, formerly article 4590i of the revised civil statutes.

The court of appeals vacated the punitive damages award and suggested a remittitur of certain future damages, but otherwise affirmed the trial court's judgment. 258 S.W.3d at 182–83. One justice disagreed in part, opining that the doctor's liability should have been capped under former article 4590i. *Id.* at 183 (Campbell, J., dissenting). The doctor brings this issue forward, along with another complaint about certain improprieties during closing argument.

## II

■ Article 4590i limits the liability of physicians (and other health care providers) to $500,000, adjusted for inflation after 1977.[2] Section 11.02(a) of the statute sets out the cap, providing:

> In an action on a health care liability claim where final judgment is rendered against a physician or health care provider, the limit of civil liability for damages of the physician or health care provider shall be limited to an amount not to exceed $500,000.

Tex.Rev.Civ. Stat. art. 4590i, § 11.02(a).[3] Section 11.02(c) then explains that the cap does not "limit the liability of any insurer" under certain circumstances:

> This section shall not limit the liability of any insurer where facts exist that would enable a party to invoke the common law theory of recovery commonly known in Texas as the "Stowers Doctrine."

---

**2.** This limit on liability is not only adjusted for fluctuations in the consumer price index but also excludes medical, hospital, and custodial care expenses. Tex.Rev.Civ. Stat. art. 4590i, §§ 11.02(b), 11.04.

**3.** Article 4590i was repealed shortly after the filing of this case. *See* n.1 *supra.* Similar

medical liability legislation is presently codified in Chapter 74 of the Texas Civil Practice and Remedies Code for actions filed on or after September 1, 2003. *See* Tex Civ. Prac. & Rem.Code §§ 74.301–.303. Because this case was filed before that date, we apply former article 4590i here.

*Id.* § 11.02(c). On their face, the two provisions do not conflict. One caps the physician's liability, while the other excepts the physician's insurer from the benefit of the cap when Stowers-like circumstances exist. It is only when one considers the common law's requirements for Stowers liability that the relationship between the two becomes more troublesome.

The common law imposes a duty on liability insurers to settle third-party claims against their insureds when reasonably prudent to do so. *See G.A. Stowers Furniture Co. v. Am. Indem. Co.,* 15 S.W.2d 544 (Tex.1929). For the duty to arise, there must be coverage for the third-party's claim, a settlement demand within policy limits, and reasonable terms "such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment." *Am. Physicians Ins. Exch. v. Garcia,* 876 S.W.2d 842, 849 (Tex.1994). When these conditions coincide and the insurer's negligent failure to settle results in an excess judgment against the insured, the insurer is liable under the Stowers Doctrine for the entire amount of the judgment, including that part exceeding the insured's policy limits. *G.A. Stowers Furniture Co.,* 15 S.W.2d at 548.

Thus, the Stowers Doctrine and the statutory cap both shield the insured physician from excess liability: the first from liability in excess of policy limits, the latter from liability in excess of the legislatively fixed cap. But because the cap limits damages without regard to insurance coverage, its application will always affect Stowers liability to some degree. When the cap is above the amount of insurance coverage, it will simply restrict Stowers liability. When the cap falls below the amount of the policy, however, the cap will eliminate the possibility of any excess liability against the insured and, with that, any

common-law claim under the Stowers Doctrine.

Because Stowers is concerned with insurance coverage, and the cap is not, this disconnect between the two creates the following conundrum: the cap does not apply to insurers if Stowers facts exist, but the cap prevents one critical element of Stowers, excess liability, from arising in whole or in part. The two courts of appeals that have considered this conundrum are of different minds about the Legislature's purpose in enacting section 11.02(c)'s Stowers exception. *Compare Welch v. McLean,* 191 S.W.3d 147, 166–71 (Tex.App.-Fort Worth 2005, no pet.) *with Phillips v. Bramlett,* 258 S.W.3d 158, 177–81 (Tex.App.-Amarillo 2007, pet. granted). The parties arguments in this case mirror the contrasting views of these two courts.

In *Welch,* the Fort Worth Court of Appeals, espousing a plain meaning approach, observed that section 11.02(a)'s damages cap applied expressly to physicians and that section 11.02(c)'s Stowers exception applied expressly to insurers. The court then, however, strayed from plain meaning to conclude that the cap also protected the insurer by implication because it placed a ceiling on any excess liability to which Stowers might apply. Thus, in *Welch's* view, the potential liability of the insurer cannot exceed the cap, although the insurer's liability may exceed its policy limits if those limits are below the cap, and Stowers facts exist. *Id.* at 168–171. According to *Welch* then, the Stowers exception applies only when the physician's policy limits are below the statutory cap and only to any excess up to the limit of the statutory cap. *Id.* at 171.

In contrast to *Welch's* plain meaning approach, the Amarillo Court of Appeals here concludes that section 11.02(c)'s exception to the cap applies not only to the insurer, which is clearly identified in the

subsection, but also to the insured physician, who is not mentioned. 258 S.W.3d at 178. The court deduces this from section 11.02(c)'s opening reference to "[t]his section" which it interprets to include subsection (a)'s liability cap. *Id.* at 178. The court thus "construe[s] section 11.02(c) to preclude any application of [the cap in] section 11.02(a) in a manner that would limit the liability of an insurer in a subsequent 'Stowers' claim." *Id.* at 178–79.

Neither case gives due regard both to the cap and its exception. The analysis in *Welch* deprives section 11.02(c) of any meaning, extending the cap to insurers when Stowers facts exist. But the court of appeals here goes to the other extreme, reading subsection (c)'s Stowers exception to defeat the cap generally, despite its internal limitations.[4]

The Dissent adopts *Welch's* view, concluding that the Stowers exception to the cap was meant only to clarify the continued, but limited, application of the Stowers Doctrine to claims governed by article 4590i. Thus, the Dissent would limit the exception in section 11.02(c) to cases involving insurance policies falling below the cap and would not apply it to other policies. But a Stowers claim, as limited by the cap, would be available to the insured physician, even if section 11.02(c) were not a part of the statute, and thus the Dissent, like *Welch*, attributes no meaning to the

Stowers exception. By doing this, the Dissent is able to disregard section 11.02(c)'s principal purpose: that the cap "not limit the liability of any insurer" when Stowers facts exist. TEX.REV.CIV. STAT. art. 4590i, § 11.02(c). The Dissent instead opts for a more circular interpretation: that the cap does "not limit the liability of any insurer" except when it does. And it does, according to the Dissent, whenever the cap applies to limit the liability of the insured.[5] As aforesaid, this interpretation renders the provision meaningless.

▪ When construing a statute, we begin with its language, drawing the Legislature's intent from the words chosen when possible. *State v. Shumake,* 199 S.W.3d 279, 284 (Tex.2006). If a statute's meaning is unclear, we "read the statute as a whole and interpret it to give effect to every part." *Jones v. Fowler,* 969 S.W.2d 429, 432 (Tex.1998). We further try to give effect to all the words of a statute, treating none of its language as surplusage when reasonably possible. *Sultan v. Mathew,* 178 S.W.3d 747, 751 (Tex.2005).

From section 11.02's language, the Legislature's intention to do two things is unmistakable. First, it intended to cap the liability of a physician or other health care provider according to the statutory formula. TEX.REV.CIV. STAT. art. 4590i, § 11.02(a). Second, it intended that the

---

**4.** Although the exception only mentions insurers, the court of appeals here applies it generally to health care providers as well, waiving the cap to insurer and insured alike whenever Stowers facts exist. The court thereby compromises subsection (a)'s cap to accommodate Stowers, apparently assuming that the Legislature intended to meld the common-law doctrine entirely into the statute through subsection (c).

**5.** The Medical Liability Insurance Improvement Act, article 4590i of the revised civil statutes, was repealed by the 78th Legislature in 2003, after the filing of this lawsuit. The

cap in section 11.02 was, however, carried forward in section 74.303(a) of the Texas Civil Practice and Remedies Code. The Stowers exception in section 11.02(c) was not carried forward, but rather replaced by section 74.303(d) which expressly provides that the insurer can now use the cap to limit its liability:

(d) The liability of any insurer under the common law theory of recovery commonly known in Texas as the "Stowers Doctrine" shall not exceed the liability of the insured.

TEX CIV. PRAC & REM.CODE § 74.303(d). We view this as a substantive change. The Dissent apparently does not.

cap should not benefit any insurer when Stowers facts exist. *Id.* § 11.02(c). Neither the court of appeals' decision in this case nor *Welch* accomplishes both. The court of appeals analysis here is flawed because it fails to leave the damage cap in place as to physicians, when Stowers facts exist. 258 S.W.3d at 181. Similarly, the analysis in *Welch* is flawed because it extends the cap's benefit to insurers without regard to whether Stowers facts exist.[6] 191 S.W.3d at 169. Both courts rely on legislative history to support their contrasting views. *Compare Welch,* 191 S.W.3d at 168–69 *with Phillips,* 258 S.W.3d at 179–80.

During the debate on medical liability, the 65th Legislature had under consideration two different versions of the Stowers exception. The House version extended the exception to physicians and other health care providers, while the Senate version limited the exception to insurers. *See Phillips,* 258 S.W.3d at 179–80; *Welch,* 191 S.W.3d at 168 nn. 22–25. The differences went to a conference committee which adopted the Senate version, thereby limiting the exception to insurers. *See Welch,* 191 S.W.3d at 168 n. 23.

The House version would have more nearly preserved a common-law Stowers claim, however, by waiving the cap as to the insured physician, thereby preserving the possibility of excess liability, a necessary element under the Stowers Doctrine. By settling on the Senate version, the Legislature chose not to include a common-law Stowers claim per se as part of the statutory scheme. The court of appeals here, however, views the legislative history differently, concluding "that the legislature intended for the 'Stowers Doctrine' to retain its common law form" and finding "[t]his intent is most evident in the discussion of how the 'Stowers Doctrine' encourages insurers to bargain in good faith during the negotiation phase of a medical malpractice case." 258 S.W.3d at 180.

Indeed, the common-law Stowers Doctrine encourages prompt and reasonable settlements by eliminating a potential for conflict between insurer and insured in cases involving damage claims exceeding policy limits. In such cases, when the insured's liability is reasonably certain, an insurer, motivated by self-interest, may be tempted to resist reasonable settlement offers, assuming that any adverse judgment will exhaust policy limits and that proceeding to trial will put only the insured's money at risk. Stowers penalizes this type of self-interest by raising the stakes for the insurer should it act unreasonably when presented with an opportunity to settle within policy limits. *See generally* 1 JAMES B. SALES AND J. HADLEY EDGAR, TEXAS TORTS AND REMEDIES § 71.09[b] (2008) (discussing Stowers actions). Article 4590i's medical liability cap, however, introduces a new element into the Stowers equation.

Capping the insured physician's liability at a fixed amount eliminates any potential for conflict between insurer and insured beyond that amount, but does nothing to

6. Part of our disagreement with the Dissent is about what the statute means by the existence of "facts ... that would enable a party to invoke ... the 'Stowers Doctrine.'" Our understanding is that this refers to the facts as found in the case, which in this case is the jury's verdict. The Dissent, on the other hand, argues that the only operative Stowers fact to be gleaned from the underlying third party liability suit is whether the judgment, capping the damages found by jury, actually exceeds the amount of insurance in the case. Thus, the Dissent views the legal effect of that verdict as the operative Stowers fact rather than the underlying fact itself. Because the Stowers exception begins with the admonition that the cap is not to limit the liability of the insurer, using the cap as part of the operative Stowers fact leads to the circular reasoning previously discussed.

encourage settlement. In fact, it may have the opposite effect in the most serious cases, that is, in cases where liability is reasonably certain to exceed the cap. The statutory Stowers exception, however, ameliorates that potential effect. *See* Tex. Rev.Civ. Stat. art. 4590i, § 11.02(c) (cap "shall not limit the liability of the insurer [when Stowers facts exist]"). Thus, although we do not accept the notion that the Legislature intended to preserve a common-law Stowers claim as part of the statute, we recognize that the debate surrounding the Stowers exception included concerns about how the cap might adversely impact settlement negotiations. *See Welch,* 191 S.W.3d at 169 & n. 25 (discussing legislative debate mentioning Stowers' purpose of encouraging good faith in the settlement process); *Phillips,* 258 S.W.3d at 179 (same).

We considered a similar problem in *American Centennial Insurance Co. v. Canal Insurance Co.,* 843 S.W.2d 480 (Tex. 1992), where the insured's purchase of an excess insurance policy operated like the cap here to potentially skew the primary insurer's duty to settle with reasonable care. In *Canal,* we held that the excess insurer, who actually suffered the loss, might maintain an action against the primary liability insurer for its wrongful refusal to settle the insured's claim within the limits of the primary policy. *Id.* at 483. We concluded that in this situation the insured, who was fully protected from liability by the excess policy, would have little incentive to enforce the primary carrier's duties and that the excess carrier should therefore be permitted to do so through equitable subrogation. *Id.* We noted further that allowing the party actually suffering the loss to enforce the insurer's duty to settle served the public interest "in fair and reasonable settlements of lawsuits by discouraging primary carriers from 'gambling' with the excess carrier's money when potential judgments approach

the primary insurer's policy limits." *Id.* at 483 (quoting *Commercial Union Ins. Co. v. Med. Protective Co.,* 426 Mich. 109, 393 N.W.2d 479, 483 (1986)). Similarly, the Stowers exception to the cap is like this right to equitable subrogation. It puts the injured third party in the shoes of the insured to the extent the cap eliminates the insured's incentive to enforce the insurer's duty to settle with reasonable care.

Thus, we conclude that both the statutory cap and its exception can be applied as written by conforming the judgment against the physician to section 11.02(a)'s cap and reserving for another case any suit against the insurer under section 11.02(c)'s Stowers exception. When insurance coverage is below the cap, this Stowers-exception claim may be shared by the insured physician and the injured third party because both will potentially have excess claims when the damages finding exceeds the cap. When insurance coverage is above the cap, however, the physician is fully protected, and only the injured third party has incentive to pursue the statutory Stowers exception. In any event, the judgment here against the physician on the underlying health care liability claim may not exceed the statutory cap, and the court of appeals accordingly erred in affirming the excess judgment in this case.

### III

■ The doctor also argues that the judgment against him should be reversed and a new trial ordered because of improper argument at the end of the trial. During final argument, plaintiffs' counsel stated: "For years, in this very conservative community, juries have been very liberal with the doctors, very liberal. What I mean is: Their verdicts didn't send much of a message at all." The doctor's counsel immediately objected with the following:

"Judge, I object to any testimony about the propriety of other trials and the verdicts reached by other juries in Lubbock." The trial court responded: "This is his argument, and it is not testimony." The doctor's counsel did not offer any further explanation of his objection, and plaintiffs' counsel thereafter continued to argue that the jury needed to send a message to the doctors of Lubbock without further objection.

Appellate complaints of improper jury argument must ordinarily be preserved by timely objection and request for an instruction that the jury disregard the improper remark. Tex.R.App. P. 33.1; *see also Standard Fire Ins. Co. v. Reese,* 584 S.W.2d 835, 839–41 (Tex.1979). The court of appeals here concluded that the asserted error was not preserved because the trial court's response indicated that it did not understand the objection, and counsel made no further attempt to clarify the court's understanding or obtain a ruling on his objection. 258 S.W.3d at 170. We agree that this objection, without more, did not preserve error in this case.

 The doctor argues in the alternative, however, that no objection was required because the comment's prejudice could not have been cured by instruction. A complaint of incurable argument may be asserted and preserved in a motion for new trial, even without a complaint and ruling during the trial. Tex.R. Civ. P. 324(b)(5). Incurable jury argument is rare, however, because "[t]ypically, retraction of the argument or instruction from the court can cure any probable harm ..." *See Living Ctrs. of Texas, Inc. v. Penalver,* 256 S.W.3d 678, 680 (Tex.2008) (per curiam). The party claiming incurable harm must persuade the court that, based on the record as a whole, the offensive argument was so extreme that a "juror of ordinary intelligence could have been persuaded by that argument to agree to a verdict contrary to that to which he would have agreed but for such argument." *Goforth v. Alvey,* 153 Tex. 449, 271 S.W.2d 404, 404 (1954); *see generally* 8 William V. Dorsaneo III, Texas Litigation Guide § 120C.06[7][a][i] (2008).

The court of appeals agreed that counsel's argument here was improper. The court observed, however, that cases finding incurable harm typically involved unsubstantiated attacks on the integrity or veracity of a party or counsel, appeals to racial prejudice, or the like. 258 S.W.3d at 170–71. The court concluded that counsel's plea to send a message to the doctors was not of this same class of impropriety, and, considering the record as a whole, not so extreme as to be incapable or cure. We agree. As we recently observed, incurable argument is that which strikes at the very core of the judicial process. *Living Ctrs. of Texas, Inc.,* 256 S.W.3d at 681–82.

\* \* \*

 In summary, we conclude that the Stowers exception of article 4590i, section 11.02(c), expressly applies to insurers only and does not waive the liability cap of section 11.02(a) generally. We further conclude that any probable harm caused by the asserted improper remarks in this case could have been cured by an instruction or retraction. No ruling, however, was requested or obtained, and the party's objection was not alone sufficient to preserve the alleged error.

The court of appeals' judgment is reversed and the cause is remanded to the trial court for it to apply the cap and render judgment consistent with our opinion.

Justice O'NEILL filed a dissenting opinion, in which Chief Justice JEFFERSON, Justice HECHT, and Justice GREEN joined.

Justice O'NEILL, joined by Chief Justice JEFFERSON, Justice HECHT, and Justice GREEN, dissenting.

I agree with the Court that section 11.02(a) of the Medical Liability Act plainly caps the physician's liability in this case, and that section 11.02(c), in denying insurers the Act's liability limitations in a *Stowers* action, does not operate to abolish that protection. *See* Act of June 16, 1977, 65th Leg., R.S., ch. 817, §§ 11.02(a), (c), 11.04, 1977 Tex. Gen. Laws 2039, 2052, *repealed by* Act of June 11, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 [hereinafter Tex.Rev.Civ. Stat. art. 4590i]. To this extent, I join the Court's opinion. The Court's analysis, however, ventures further and extends *Stowers* well beyond its common law mooring. The *Stowers* doctrine was crafted to afford the insured a safe harbor should its insurer unreasonably refuse to settle a claim within policy limits and the insured thereafter suffer an excess judgment. By extending *Stowers* protection beyond the actual peril to which the insured is exposed, the Court ventures into uncharted waters with no footing in the statutory text or the common law. In my view, section 11.02(c) merely clarifies that section 11.02(a) does not cap the amount an insured may recover from its insurer in a future *Stowers* action; it does not pin that potential recovery on a hypothetical judgment for which the insured is not liable. It may be true, although not in this case, that nonsettling insurers whose policy limits reach or exceed the statutory cap face minimal *Stowers* exposure when a jury awards damages exceeding the cap. But there is nothing to indicate the Legislature intended section 11.02(c) to afford insureds a windfall beyond the damages actually suffered. The Court avoids such an untenable result by construing the statute to grant the plaintiff in the underlying malpractice suit a claim for equitable subrogation against the insurer who is negligent in refusing to settle.

But the plaintiff cannot be equitably subrogated to a cause of action that does not exist, and what exists is a *Stowers* claim for the amount by which the judgment exceeds policy limits. Because the Court's interpretation subjects insurers to liability beyond that which *Stowers* would allow, I respectfully dissent. Rather than remand the case for further proceedings, I would render judgment for the plaintiff pursuant to the statute.

In construing a statute, our goal is to give effect to the Legislature's intent. Tex. Gov't Code § 312.005; *Kroger Co. v. Keng,* 23 S.W.3d 347, 349 (Tex.2000). To discern that intent, we look first to the statute's plain language. *Cont'l Cas. Co. v. Downs,* 81 S.W.3d 803, 805 (Tex.2002). We must consider the statute as a whole, and not its provisions in isolation. *Id.* Section 11.02(a) limits physicians' liability for noneconomic damages to $500,000, as adjusted by the Consumer Price Index. Tex.Rev.Civ. Stat. art. 4590i, §§ 11.02(a), 11.04. Section 11.02(c) provides that the statute's limitation of liability does not extend to an insurer when facts exist that would support a *Stowers* claim. *Id.* at § 11.02(c). In crafting subsection (c), the Legislature clearly indicated it did not intend the subsection (a) damage cap for physicians to limit the liability of an insurer who negligently rejects a reasonable settlement demand within policy limits. But that does not mean the Legislature intended to extend insurers' potential liability beyond the limits of the *Stowers* doctrine itself. *See G.A. Stowers Furniture Co. v. Am. Indem. Co.,* 15 S.W.2d 544 (Tex. Comm'n App.1929, holding approved). To the contrary, subsection (c) only applies "where facts exist that would enable a party to invoke the common law theory of recovery commonly known in Texas as the 'Stowers Doctrine.'" Tex. Rev.Civ. Stat. art. 4590i, § 11.02(c). We must begin, then, with the parameters of

the *Stowers* doctrine and the recovery it affords, for subsection (c) lifts the statutory cap only to the extent that damages would be available under *Stowers*.

*Stowers* liability is designed to compensate *the insured* for damages suffered as a result of its insurer's unreasonable refusal to settle. *See Hernandez v. Great Am. Ins. Co. of N.Y.*, 464 S.W.2d 91, 94 (Tex. 1971) ("[T]he Stowers action lies to repair the harm to the insured. The tort of the insurer in mismanaging the defense of the insured in the first case is harmful to the insured alone."). For the *Stowers* duty to arise, there must be policy coverage for the claim, a settlement demand within policy limits, and the demand must be reasonable "such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to *an excess judgment*." *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 849 (Tex.1994) (emphasis added). When the *Stowers* duty is breached, the insured is afforded "the *Stowers* remedy of shifting the risk of *an excess judgment* onto the insurer." *Id.* (emphasis added). Accordingly, a *judgment* against the insured that exceeds policy limits is the *sine qua non* of a *Stowers* claim.

The Court goes astray in presuming, incorrectly, that the section 11.02(a) damage cap "prevents one critical element of *Stowers*, excess liability, from arising in whole or in part," and from that premise concludes the Legislature must have intended to tie *Stowers* liability against physicians' insurers to the jury's verdict rather than the court's judgment. The Court's premise is flawed in a number of respects. First, the Court presupposes that nearly all physicians will insure themselves to the full extent of the statutory cap, which would substantially diminish the potential for excess liability. However, one need look no further than this case to see the fallacy of the Court's supposition. Taking into account the statutory adjustment for fluctuations in the Consumer Price Index, and excluding economic damages which are not subject to the cap, section 11.02(a) operated in this case to reduce the jury's $9,196,364.50 award against Dr. Phillips to $1,585,365.85. 258 S.W.3d 158, 176–77; Tex.Rev.Civ. Stat. art. 4590i, §§ 11.02(a), (b), 11.04. Dr. Phillips, however, was insured under his professional liability insurance policy for only $200,000. Accordingly, Dr. Phillips faces nearly $1.4 million in personal exposure on the capped judgment in excess of his policy limits, for which he may pursue a *Stowers* claim against his insurer. It is simply not true, as the Court posits, that the statutory cap eliminates the possibility of liability in excess of $500,000 against insurers who unreasonably refuse to settle.

Second, the Court concludes that my view, which comports with that of the court's in *Welch v. McLean*, 191 S.W.3d 147, 166–71 (Tex.App.-Fort Worth 2005, no pet.), deprives section 11.02(c) of any meaning because it extends the cap to insurers when *Stowers* would not. However, it is not the statutory cap that operates to limit an insurer's excess liability but the *Stowers* doctrine itself, which ties that liability to the judgment against the insured. The Court apparently believes the damage cap's potential to cabin insurers' *Stowers* exposure is undesirable, as reasonable and timely settlements will thereby be discouraged. But the Court's approach of pinning *Stowers* liability under section 11.02(c) to a hypothetical judgment based on the jury's verdict exposes insurers to liability far exceeding that which *Stowers* would allow and, more importantly, undermines the Medical Liability Act's overarching purpose to reduce the cost of insurance in order to alleviate what the Legislature determined to be a health care liability crisis in Texas. *See* Tex.Rev. Civ. Stat. art. 4590i, § 1.02(a)(4). Finally,

even if it were true, as the Court presumes, that nearly all physicians are fully insured in every case up to the statutory cap (which is not as easy as it sounds considering the cap's variability), insurers remain subject to liability for special and consequential damages that their negligent failure to settle caused their insureds, which section 11.02(c) makes clear is not subject to the section 11.02(a) damage cap. *See Ranger County Mut. Ins. Co. v. Guin*, 723 S.W.2d 656, 660 (Tex.1987) (noting that in a *Stowers* action, the insurer is alleged to have breached its agency relationship, so tort damages will be available). And even if the Court's fears are true that the statutory cap makes insurers more likely to unreasonably refuse settlement offers because little is at risk in a subsequent *Stowers* action (which I consider unlikely considering the costs involved in protracted litigation), this is a function of the cap itself and not of the insurer-insured relationship, as physicians who might be uninsured would presumably have the same predilection. Removing the cap only when an *insurer* refuses to settle for more creates a kind of reverse-*Stowers* problem whereby insurers are encouraged to settle for more than an uninsured physician would. In my view, the Legislature's intent in enacting 11.02(c) was likely much less complicated than what the Court imagines.

To the extent the Court's interpretation of section 11.02(c) exposes insurers to liability in excess of that which *Stowers* would permit, I respectfully dissent. I would render judgment based on what the parties seem to agree the cap allows: $1,585,365.85 in favor of the plaintiff.