**Opinion filed April 14, 2011**



In The

# Eleventh Court of Appeals

_____

## No. 11-09-00339-CV

_____

## FINIS DEAN SMITH AND DEBBY SMITH, Appellants

## V.

## BASA RESOURCES, INC., Appellee

**On Appeal from the 90th District Court**

**Stephens County, Texas**

**Trial Court Cause No. 29,590**

### M E M O R A N D U M   O P I N I O N

Finis Dean Smith and Debby Smith brought suit against BASA Resources, Inc. for damages to their real property caused by a leak in a buried flowline and by BASA's remedial acts. The Smiths asserted causes of action for negligence, gross negligence, negligence per se, statutory relief for the violation of a railroad commission rule, nuisance, trespass, and breach of contract. Based upon the jury's answers to the issues submitted, the trial court entered a take-nothing judgment against the Smiths. We affirm.

*Issues*

The Smiths present seven issues for review. In the first issue, they argue that, as a matter of law, the evidence established that BASA was negligent in failing to prevent the escape and leakage of oil and saltwater from its pipeline. In the second issue, they assert that the jury's failure to find BASA negligent was against the great weight and preponderance of the evidence. The Smiths argue in their third and fourth issues that they proved, as a matter of law, that BASA committed a trespass by permitting oil and saltwater to damage the Smiths' property and that the jury's failure to find trespass was against the great weight and preponderance of the evidence. In their fifth and sixth issues, the Smiths contend that the evidence is legally and factually insufficient to show that BASA was acting as a reasonably prudent operator when it violated a Texas Railroad Commission rule. In the final issue, the Smiths complain of a jury argument made by BASA's counsel. Additionally, BASA has briefed a cross-point presenting an alternative ground upon which to affirm the trial court's judgment: that the cost of cleanup is not economically feasible as a matter of law. We do not reach the merits of the cross-point as it is not necessary to the disposition of this appeal. TEX. R. APP. P. 47.1.

*Negligence*

In their first four issues, the Smiths assert legal and factual sufficiency challenges to the evidence in support of jury findings upon which the Smiths had the burden of proof. We will apply the following well-recognized standards in addressing the first four issues. When a party attacks the legal sufficiency of an adverse finding on an issue on which it has the burden of proof, it must demonstrate that the evidence establishes, as a matter of law, all vital facts in support of that issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). We must first examine the record for probative evidence that supports the jury's finding, while ignoring all evidence to the contrary unless reasonable jurors could not. *Id.*; *see City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). If there is no evidence to support the jury's answer, then we must examine the entire record to see if the contrary proposition is established as a matter of law. *Dow Chem.*, 46 S.W.3d at 241. The issue should be sustained only if the contrary proposition is conclusively established. *Id.* When a party attacks the factual sufficiency of an adverse finding on an issue on which it has the burden of proof, it must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Id.* at 242. We must consider and weigh all of the evidence, and we can set aside the verdict only if the evidence is so weak or the

2

finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

In the first and second issues, the Smiths' sufficiency challenges relate to the jury's failure to find that BASA's negligence, if any, proximately caused any damages. The Smiths argue that BASA was negligent in failing to prevent the escape and leakage of oil and saltwater from the flowline. In order to recover on a negligence claim, a party must show three essential elements: (1) a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages proximately resulting from such breach. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987); *Stukes v. Bachmeyer*, 249 S.W.3d 461, 468 (Tex. App.—Eastland 2007, pet. denied). BASA owed a duty to the Smiths as owner of the surface estate not to negligently injure such estate. *See Gen. Crude Oil Co. v. Aiken*, 344 S.W.2d 668, 669 (Tex. 1961).

The record reflects that Mr. Smith owns the surface estate of a rugged, 515.5-acre ranch and a small portion of the minerals. The ranch has been subject to a mineral lease since 1916, and BASA is the successor in interest to the original lessee. The ranch is located in the Eliasville-Caddo Unit. In the ECU, there are forty-one producing wells and forty-four injection wells. Four of the producing wells and three of the injection wells are located on the ranch, as well as approximately three miles of flowline. BASA has owned and operated the ECU since August 2003.

On June 13, 2007, BASA pumper, Jerry Don Bryant, discovered a leak coming from a buried production flowline. Bryant immediately turned off the power to the well and turned off the valve to the flowline. He then notified his foreman, and they both worked diligently to attempt to keep the oil and saltwater from running further down the creek and entering the Clear Fork of the Brazos River at the boundary of the ranch. On the same day that the leak was discovered, BASA hired Melvin Holland to bulldoze an emergency access road near part of the creek so that vacuum trucks could get to the area to vacuum up the oil and saltwater. BASA instructed the dozer operator not to knock down any big oak trees and to do as little damage as possible to the ranch.

On June 19, 2007, the railroad commission inspected the area and cited BASA for polluting an area of the creek that the commission measured as 10 feet wide and 1,603 feet long. Subsequent inspections were conducted by the railroad commission, and no pollution was found. The railroad commission closed its case on this leak in December 2007. BASA performed other

remedial actions, such as reseeding the area. At the Smiths' request, BASA also put gravel on the road to prevent erosion, placed large boulders at the entrance to the creek area, and hauled off the brush and trees that had been pushed. The Smiths sought $204,500 to replace the oak trees either pushed by the dozer or killed by the oil with like-sized trees, $100,863 to further remediate the surface, and at least $125,000 in attorney's fees.

The cause of the leak was not disputed. The leak was caused by a rusted bolt on a buried coupling – a "Victaulic poly huggie" – that had been used to join two pieces of the poly flowline. The bolt had been coated with Roskote, a substance used to keep metal from rusting. The flowline was buried approximately three feet underneath the surface. BASA employees testified about numerous operational safeguards that it utilized to prevent leaks and spills, including pressure monitors, various alarm systems, coated lines, and automatic shut-down devices.

The Smiths' argument that BASA "breached its duty of ordinary care" by failing "to properly maintain the 162 flowline" and "avoid the flowline's leak" is not supported by the record. There was probative evidence that BASA properly maintained its flowlines, that an operator exercising ordinary care would not dig up buried flowlines just to inspect them, that BASA had instituted numerous operational safeguards, that the leak was caused by a rusted bolt on a huggie, and that such huggies were customarily used to join poly flowlines. We hold that there is probative evidence from which the jury could have found that BASA did not act negligently, that the Smiths did not conclusively prove BASA's negligence, and that the jury's finding is not against the great weight and preponderance of the evidence. The first and second issues are overruled.

*Trespass*

In their third and fourth issues, the Smiths' sufficiency challenges relate to the jury's failure to find that BASA committed a trespass against the Smiths. The Smiths contend that BASA committed a trespass by permitting oil and saltwater to damage their property. Trespass to real property occurs when a person enters or permits something to enter another's land *without consent*. *Stukes*, 249 S.W.3d at 465. To recover trespass damages, a plaintiff must prove (1) that it owns or has a lawful right to possess real property; (2) that the defendant physically, intentionally and voluntarily entered the land; and (3) that the defendant's trespass caused damage. *Id.* BASA was the successor in interest to the mineral lease covering the ranch. BASA held the dominant mineral estate, to which the surface estate was servient. The mineral lease

4

explicitly gave BASA the "full and exclusive authority to enter upon said premises and to dig, drill, operate . . . and to construct on said premises and to remove therefrom at pleasure, pumping plants, tracks, tanks, pipe lines and other things necessary in the operation of this lease, avoiding as far as practicable damage to fences and growing crops." The mineral lease authorizes BASA's activities on the ranch and precludes the Smiths' trespass claims. *Stephenson v. Vastar Res., Inc.*, 89 S.W.3d 790, 795 (Tex. App.—Corpus Christi 2002, pet. denied). Furthermore, the evidence did not show that BASA intentionally or voluntarily permitted the oil and saltwater to leak onto the land. We hold that there is probative evidence from which the jury could have found that BASA did not trespass, that the Smiths did not conclusively prove that a trespass occurred, and that the jury's finding is not against the great weight and preponderance of the evidence. The Smiths' third and fourth issues are overruled.

*Reasonably Prudent Operator*

In their fifth and sixth issues, the Smiths contend that the evidence is legally and factually insufficient to show that BASA was acting as a reasonably prudent operator when it violated a railroad commission rule. The jury found that BASA violated "Railroad Commission of Texas Statewide Rule 8," which provides that no person conducting oil and gas activities may cause or allow pollution of surface or subsurface water. A person "may sue for and recover damages" for such violation, "[p]rovided, however, that . . . it shall be a defense that the lease owner or operator was acting as a reasonably prudent operator would act under the same or similar facts and circumstances." TEX. NAT. RES. CODE ANN. § 85.321 (Vernon 2011). The jury found that the violation in this case occurred while BASA was acting as a reasonably prudent operator would act under the same or similar facts and circumstances.

BASA had the burden of proof on its defensive question regarding whether it was acting as a reasonably prudent operator. Therefore, in order to address the Smiths' legal sufficiency/no-evidence challenge, we must consider only the evidence and inferences that tend to support the finding, disregarding any evidence or inferences to the contrary. *Sw. Key Program, Inc. v. Gil-Perez*, 81 S.W.3d 269, 274 (Tex. 2002); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *see Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). We may sustain a no-evidence challenge only if one of the following circumstances exists: (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence

5

offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow*, 953 S.W.2d at 711. We must examine the record for probative evidence that supports the jury's finding, while giving credit to all favorable evidence that reasonable jurors could believe and ignoring all evidence to the contrary unless reasonable jurors could not. *City of Keller*, 168 S.W.3d at 807, 827, 830. In order to address the factual sufficiency challenge to the reasonably-prudent-operator finding, we must consider and weigh all of the evidence and should set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex. 1986).

The Smiths assert first that BASA failed to present any evidence that it had acted as a reasonably prudent operator and second that BASA "essentially" conceded liability in its opening statement and in the testimony of BASA's president. During his opening statement, BASA's attorney stated:

> There's really not any dispute in this case as to whether or not Mr. and Mrs. Smith are entitled to be compensated for the damages that have occurred, damages that have occurred to the trees. The question before you and the question that you're going to be asked to decide is, okay, what is reasonable.

BASA's attorney also stated that the evidence would show that BASA's actions with respect to the leak were reasonable. He also indicated that the monetary damages requested by the Smiths were not reasonable under the circumstances. BASA's president subsequently testified during examination by the Smiths' attorney as follows:

> Q. And is it fair to say that as president of BASA that you believe the Smiths should be compensated for the grass and trees that were killed and the trees that were uprooted and destroyed related to the spill?
>
> A. Well, that's why we're here today. We couldn't agree, so we're here.
>
> Q. But you agree on the concept that they should be compensated?
>
> A. Yes, sir.
>
> Q. The amount is what the dispute is about?
>
> A. That's correct.

The Smiths do not cite any authority to support their contention. And, we cannot hold that either the opening statement of BASA's attorney or the testimony of BASA's president in which he agreed with the concept that the Smiths should be compensated constitutes a concession of liability. Furthermore, there was a substantial amount of probative evidence from which the jury could have found that BASA acted as a reasonably prudent operator would have acted under the same circumstances. As noted above, there was probative evidence that BASA's equipment was adequate, that BASA properly maintained its flowlines, that an operator exercising ordinary care would not dig up buried flowlines just to inspect them, that BASA had instituted a number of operational safeguards, that the leak was caused by a rusted bolt on a huggie, and that such huggies were customarily used to join poly flowlines. There was also probative evidence that BASA acted reasonably in the steps it undertook to clean and remediate the leak. The evidence regarding BASA acting as a reasonably prudent operator was not so weak and the finding was not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. The Smiths' fifth and sixth issues are overruled.

*Jury Argument*

In their final issue, the Smiths argue that incurable harm resulted when, during closing argument, BASA's counsel cautioned the jurors about the effect their verdict would have on their community. The record shows that BASA's counsel began closing arguments as follows:

> It's no longer morning, so I'll tell you we really appreciate your service, everyone here does. Not just the Smiths but you have oil and gas people all over our community. We live in an oil field community, so your verdict is a lot more important than just to one person in this case. It's a case that's going to decide a lot. It's going to decide what is reasonable, what do we have operators doing. When we have a spill, do we clean it up? Yes.

At that point, the Smiths objected, and the trial court sustained the objection. However, the Smiths did not request an instruction to disregard. Consequently, they assert on appeal, as they did in their motion for new trial, that the error was incurable. *See* TEX. R. CIV. P. 324(b)(5). We disagree.

Incurable jury argument is rare because retraction of the argument or instruction from the court can typically cure any probable harm. *Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009). The party claiming incurable harm must persuade the court that, based on the record as a whole, the offensive argument was so extreme that a juror of ordinary intelligence could have

7

been persuaded by that argument to agree to a verdict contrary to that which he would have otherwise agreed. *Id.* Incurable jury argument "is that which strikes at the very core of the judicial process." *Id.*; *see Living Ctrs. of Tex., Inc. v. Peñalver*, 256 S.W.3d 678, 681 (Tex. 2008) (such as appeals to racial prejudice, unsupported and extreme personal attacks on parties and witnesses, or an unsupported accusation of witness manipulation). In *Phillips*, the court concluded that counsel's plea for that jury to send a message to the doctors in the community, unlike prior juries in the community, did not constitute incurable jury argument. *Id.* at 882-83. Similarly, we hold that the argument made by BASA's counsel was not such that the harm therefrom could not be eliminated by counsel's retraction or by an instruction from the court. Because the argument was not incurable, the Smiths' seventh issue is overruled.

The judgment of the trial court is affirmed.


JIM R. WRIGHT
CHIEF JUSTICE


April 14, 2011

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.