**Affirmed and Opinion Filed February 2, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00742-CV

**AZEB RUDER, Appellant**
**V.**
**WILLIAM JORDAN D/B/A WILLIAM DAVIS REALTY, WILLIAM DAVIS REAL ESTATE SERVICES, LLC D/B/A WILLIAM DAVIS REALTY AND KATHY JABRI, Appellees**

**On Appeal from the County Court at Law No. 4**
**Collin County, Texas**
**Trial Court Cause No. 004-01346-2014**

## MEMORANDUM OPINION
Before Justices Lang, Brown, and Whitehill
Opinion by Justice Whitehill

A jury awarded damages and attorney's fees to William Jordon D/B/A William Davis Realty, William Davis Real Estate Services, LLC D/B/A William Davis Realty and Kathy Jabri (collectively, Appellees) after finding that Azeb Ruder breached a listing agreement that required payment of a brokerage commission to her agent Jabri. The damages were offset by attorney's fees and costs awarded to Ruder on an earlier TCPA motion to dismiss.[1]

In thirteen issues that can be generally distilled to three, Ruder argues that: (i) the trial court failed to apply the proper standard in awarding mandatory costs and attorney's fees under the

---

[1] The Texas Citizens Participation Act, Tex. Civ. Prac. & Rem. Code § 27.009(a)(1).

TCPA because the evidence showed that she billed more time and expenses than were awarded and the trial court improperly included "equitable and just" considerations in determining the amount to award; (ii) the judgment on the contract claim should be reversed as a matter of law because she lost title to the property through no fault of her own; and (iii) the trial court erred by denying her motion for new trial because Appellees' counsel made incurable jury argument.

We conclude that (i) the trial court did not abuse its discretion in determining and awarding reasonable attorney's fees and costs under the TCPA because the evidence is sufficient to support the award and there is no indication that the court included "equitable and just" considerations in its determination; (ii) Ruder was not entitled to judgment on the breach of contract claim as a matter of law because there was evidence Ruder caused the transaction to not close; and (iii) the jury argument was proper because it did not violate the court's limine order and invited the jury to draw a reasonable inference from the evidence. Moreover, even if the argument was improper, it was not incurable. We thus affirm the trial court's judgment.

## I. BACKGROUND

Ruder and her husband were divorced in 2009, and the court awarded her sole ownership of the couple's house in Plano (the Property).

In 2013, Ruder decided to sell the Property so she could move to Frisco and enroll her children in school there. Her ex-husband was upset when he learned of her plans because he did not want Ruder to move. So on August 18, 2013, he initiated another divorce proceeding alleging a common law marriage. On September 19, 2013, the court conducted a hearing in the divorce case and issued an order allowing Ruder to sell the house.

In January 2014, Ruder met with Jabri and signed a residential real estate agreement (the Listing Agreement). The Listing Agreement provides that Ruder is the seller and William Davis Realty (the Company) is the broker. Jabri is the Company's agent. Section Five of the agreement

provides that Ruder will pay the Company 5% of the sales price when the Company procures a buyer for the Property.

Ruder did not disclose the pending divorce proceeding on the seller's disclosure accompanying the Listing Agreement. She said she did not disclose it because she owned the house and she had a court order saying she could sell it.

Jabri marketed the Property and procured a buyer in February, 2014. The sales agreement between Ruder and the buyer provided that Ruder would make certain repairs on the Property, including replacing the roof at least seventy-two hours before the March 14, 2014 closing.

The day after the sales contract was signed, Ruder changed her mind about the roof, contacted Jabri, and demanded that the buyer pay for part of the roof replacement. When Jabri explained that there was a binding contract, Ruder told her that her ex-husband did not want her to sell and would create a way for her to get out of the contract.

After Jabri confirmed that the buyer would not contribute to the roof replacement, Ruder told her she did not want to sell. She asked Jabri to forward the sales agreement to her attorney for review. After she consulted with her attorney, however, Ruder advised Jabri that she would proceed with the sale.

On February 19, 2014, the title company asked Jabri if Ruder's ex-husband would sign off on the deed in light of the pending divorce proceeding. Although Ruder claimed she told Jabri about the pending divorce before she signed the Listing Agreement, Jabri testified that the February 19 title company communication was the first she heard of it. On cross-examination, Ruder said that she told Jabri about the divorce proceeding around February 2 (three weeks after the Listing Agreement was signed).

Eileen Fisher, the title company representative, communicated with Ruder about the title issue that the pending divorce proceeding caused and the steps needed to resolve the issue. Fisher

told Ruder that she needed to provide either a ruling from the divorce court or have her ex-husband sign off on the deed. But Ruder did not send the title company any documents and said she did not want her ex-husband to sign off on the deed.

When the matter was not resolved by March 13, the title company sought an extension on the closing date from the buyer. The buyer refused, and on March 14, terminated the sales agreement because Ruder had not replaced the roof or resolved the cloud on the Property's title.

Ruder later posted an unfavorable review of Jabri on Zillow.com. Jabri demanded that Ruder pay her commission, but Ruder refused. Thereafter, Jabri and the Company sued Ruder for defamation and breach of contract.

Ruder answered, and filed a TCPA motion to dismiss the defamation claim seeking attorney's fees and costs. The trial court denied the motion, and Ruder appealed. This court reversed the trial court's order and remanded for a determination of attorney's fees and costs.

Ruder submitted her attorney's affidavit on costs and attorney's fees, and Appellee's counsel filed a controverting affidavit. Although Ruder requested $30,380.00 in attorney's fees and $5,464.70 in costs, the trial court awarded $9,000 for attorney's fees and $600 for costs.

The parties tried the breach of contract claim to a jury. The jury found that the broker's commission in the Listing Agreement was payable. Thereafter, the court awarded Appellees $10,750 in damages and $41,560 in attorney's fees, offset by the $9,600 in TCPA attorney's fees and costs awarded to Ruder.

## II. ANALYSIS

**A. Issues One, Two, Three, and Four: Did the trial court err in determining the TCPA attorney's fees award amount?**

Ruder's first four issues complain about the amount of her TCPA attorney's fees award. Specifically, she argues that: (i) the trial court erred by failing to award reasonable attorney's fees, costs, and expenses under the TCPA; (ii) the $9,000 attorney's fees award was unreasonable in

–4–

light of the time counsel expended researching, drafting, preparing for hearings, and successfully appealing an order denying dismissal of the defamation claim; (iii) the $600 cost award was unreasonable because she incurred a $4,300 Lexis research expense and a $310 appellate filing fee expense; and (iv) the trial court should be required to reconsider the award "in light of the Texas Supreme Court's rejection of 'considerations of justice and equity' in connection with reasonable attorney's fees and costs under the TCPA." As explained below, we are not persuaded by these arguments.

### 1.      Standard of Review and Applicable Law

The TCPA provides for the expedited dismissal of a legal action that implicates a defendant's right of free speech or other First Amendment right when the party filing the action cannot establish the Act's threshold requirement of a prima facie case. *See* TEX. CIV. PRAC. & REM. CODE § 27.005. A successful motion to dismiss under the Act entitles the moving party to an award of court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action. *Id.* § 27.009(a).

Fixing a reasonable attorney's fee is a matter within the sound discretion of the trial court, and its judgment will not be reversed on appeal absent a clear abuse of discretion. *See Rowley v. Lake Area Nat. Bank,* 976 S.W.2d 715, 724 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). Under this standard, legal and factual sufficiency are not independent grounds of error, but rather are relevant factors in assessing whether the trial court abused its discretion. *See Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991); *see also Martin v. Brasuel*, No. 05-06-01626-CV, 2008 WL 152175, at *4 (Tex. App.—Dallas 2008, no pet.) (mem. op.) (the reasonable and necessary aspect of a fee award is reviewed for sufficiency of evidence).

Whether attorney's fees are reasonable and necessary is a fact question. *See Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010). Thus, an abuse of discretion does not occur where the

trial court bases its decision on conflicting evidence. *See Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978). The fact finder can consider the nature and complexity of the case, the amount in controversy, the amount of time and effort required, and the expertise of counsel in arriving at a reasonable amount of attorney's fees. *See, e.g., Murrco Agency, Inc. v. Ryan*, 800 S.W.2d 600, 607 (Tex. App.—Dallas 1990, no writ) (factors to be considered include nature of the case, time spent, and skill and experience required). The amount and reasonableness of attorney's fees also involves several intangible factors, and the trial court can draw on its own expertise in that decision-making. *See id*. at 606–07.

The party seeking attorney's fees has the burden of proof on the amount and reasonableness of the fees sought. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762–63 (Tex. 2012). "A 'reasonable' attorney's fee 'is one that is not excessive or extreme, but rather moderate or fair.'" *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016). While the determination is within the trial court's discretion, under the TCPA, that discretion does not include considerations of justice and equity. *Id.*

Ruder requested $30,380 for attorney time and $5,464 for costs and expenses related to the defamation claim and TCPA motion to dismiss. In support of her request, she submitted her attorney's affidavit, which included a description of the hours billed, billing rates, and a description of the tasks performed.

Appellees challenged the reasonableness and necessity of the fees and expenses, as well as the absence of segregation between the contract claim and the defamation claim. Specifically, appellees' evidence, set forth in their attorney's affidavit, challenged and addressed:

- $2,100.00 in attorneys' fees where the description of the legal services related only to the breach of contract claims;

- $14,950.00 in attorneys' fees where the legal services relating to the breach of contract claim were not segregated from the defamation claim;

- $4,441.64 in electronic research expenses where the breach of contract claim was not segregated from the defamation claim;

- A $250.00 charge (0.5 hours at $500 per hour) for a three-sentence letter;

- 13.1 hours for drafting a 10 page reply brief, five (5) of which pertained to Appellant's motion to dismiss the contract claims;

- 38.9 hours for researching and drafting a 20-page appellate brief, which included 10 hours of research pertaining to the TCPA over and above 8.5 hours previously charged for researching the same topics in connection with the motion to dismiss.;

- .5 hours expended on researching defamation issues for the response brief in the interlocutory appeal, of which many of the same topics were previously researched;

- 18.7 hours expended by one attorney to draft an 18-page reply brief for the interlocutory appeal, with additional time expended by another attorney on the same task, of which only 2.0 hours is specifically segregated from time spent on breach of contract matters.

Appellees also controverted Ruder's counsel's claim that the fee charged was the type customarily charged in that location for similar services.

Ruder replied, arguing that some of the work on the defamation claim was intertwined with the contract claim, and the fees were adequately segregated. Ruder further argued that the billing rates and the time expended for various tasks was reasonable.

While Ruder's fees affidavit provided competent evidence, it was not conclusive. In fact, it was controverted by an equally competent opposing affidavit. Thus, in making its final decision, the trial court had before it conflicting evidence raising a fact question on the reasonableness of the fees and expenses, and exercised its discretion in resolving that question.

Ruder insists that the case should be remanded because the trial court improperly considered justice and equity in making the award. We agree that justice and equity are not part

of the TCPA attorney's fees equation. *See Sullivan*, 488 S.W.3d at 299. But nothing suggests that the trial court included these considerations in its award.

Neither the trial court's order awarding attorney's fees and costs, nor the final judgment incorporating the order include fact findings or legal conclusions. Instead, without explaining its basis for doing so, the court awarded $9,000 for attorney's fees and $600 for costs. Our record does not include a transcript of the hearing on the motion for attorney's fees, or the motion for reconsideration of attorney's fees. Thus, there is no basis for concluding that the trial court improperly considered justice and equity in making the attorney's fees award.

Accordingly, there is sufficient evidence to support the amount of fees and expenses awarded, and there is nothing further to establish an abuse of discretion. We therefore resolve Ruder's first four issues against her.

**B.      Issues Five, Six, Seven, Eight, and Nine:    Should the judgment on the contract claim be reversed?**

Ruder moved for a directed verdict, a JNOV, and for a new trial, all of which were denied. In her next five issues, she argues that she was entitled to judgment as a matter of law because the Listing Agreement unambiguously provided that she did not owe a broker's fee if she was unable to deliver clear title through no fault of her own due to "loss of ownership as a result of a legal proceeding." According to Ruder, the evidence establishes that both conditions occurred here.

**1.      Standard of Review**

A directed verdict is warranted when the evidence is such that no other verdict can be reached and the moving party is entitled to judgment as a matter of law. *See Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.*, 470 S.W.3d 636, 645 (Tex. App.—Dallas 2015, no pet.). A directed verdict for a defendant may be proper in three situations when: (i) a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery; (ii) the plaintiff either admits or the evidence conclusively establishes a defense to the plaintiff's cause of action; or (iii)

a legal principle precludes recovery. *See Prudential Ins. v. Fin. Review Servs.*, 29 S.W.3d 74, 77 (Tex. 2000).

To the extent that a trial court's denial of a directed verdict is based on the evidence, the standard of review is a legal sufficiency or "no evidence" standard of review. *See Flagstar Bank, FSB v. Walker*, 451 S.W.3d 490, 498 (Tex. App.—Dallas 2014, no pet.). In such a review, an appellate court considers all the evidence in a light most favorable to the nonmovant, and resolves all reasonable inferences that arise from the evidence admitted at the trial in the nonmovant's favor. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). If a fact issue is raised on a material question, a directed verdict is not proper and the issue must go to the jury. *See Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 220–21 (Tex. 2011). On the other hand, to the extent that the trial court's ruling on a directed verdict is based on a question of law, an appellate court reviews that ruling de novo. *See JSC Neftegas-Impex v. Citibank, N.A.*, 365 S.W.3d 387, 398 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

A judgment notwithstanding the verdict is proper when a directed verdict would have been proper. *See* Tex. R. Civ. P. 301; *Fort Bend Cty. Drainage Dist. v. Sbrusch,* 818 S.W.2d 392, 394 (Tex. 1991). And the standard of review for the denial of a motion for judgment notwithstanding the verdict is the same as for the denial of a motion for directed verdict. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005) ("the test for legal sufficiency should be the same for summary judgments, directed verdicts, judgments notwithstanding the verdict, and appellate no-evidence review").

An appellate court reviews the denial of a motion for new trial for an abuse of discretion. *See Hodges v. Rajpal*, 459 S.W.3d 237, 250 (Tex. App.—Dallas 2015, no pet.). A trial court abuses its discretion when its actions are arbitrary or unreasonable, or when it acts without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701

S.W.2d 238, 241–42 (Tex. 1985). A court has no discretion to misconstrue the law or misapply the law to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). A trial court therefore abuses its discretion when it fails to analyze or apply the law correctly. *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (per curiam).

### 2.     The Evidence at Trial

The Listing Agreement provides that a broker's compensation is earned when "Broker individually or in cooperation with another broker procures a buyer ready, willing, and able to buy the property at the listing price or at any other price acceptable to the seller." The parties stipulated that there was a valid and enforceable contract and that this condition occurred. Thus, there was no issue concerning whether the broker's commission was earned; rather, the only issue was whether the fee was payable.

The Listing Agreement describes when a broker's commission is payable and when it is not payable. Concerning the latter, the agreement provides:

> Broker's compensation is not payable if a sale of the Property does not close or fund as a result of (i) Seller's failure, without fault of Seller, to deliver to a buyer a deed or title policy as required by the contract to sell; (ii) loss of ownership due to foreclosure or other legal proceeding . . . .

The parties agree, and the evidence shows, that the divorce proceeding created a cloud on the Property's title, and, as a result, the title company could not issue a title policy as required by the sales agreement. This is the alleged "loss of ownership resulting from a legal proceeding" upon which Ruder relies.

By definition, however, a cloud on title does not equate to a loss of ownership. "A cloud on title exists when an outstanding claim or encumbrance is shown, which, on its face, if valid, would affect or impair" the owner's title to the property. *See Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Thus, a cloud is something with the *potential* to affect ownership if and when it is established as valid. No such validity was established here.

The 2009 decree in the original divorce awarded Ruder sole ownership of the Property. Ruder consistently acknowledged that she owned the Property, and insisted that she had the right to sell it.

When the cloud on the title was discovered, Fisher (the title company representative), contacted Jabri and then Ruder. She told Ruder that the pending divorce created a cloud on the title, and as a result, Ruder needed to either (i) have her ex-husband sign off on the deed, or (ii) provide documentation showing a ruling from the court. Ruder, however, believed that she had the authority to sell without complying with the title company requests. She did not keep the title company apprised of the status of the divorce proceeding; and, although she claimed to have transcripts and orders that resolved the issue, she never provided this documentation. She also refused to ask her ex-husband to sign off on the deed.

In the interim, while the sale was pending, Ruder demanded that the buyer increase the purchase price and allow her to lease back the Property after closing. The buyer refused and began to express concerns that the roof had not been replaced.

In early March, Jabri tried to help resolve the issue by sending an email to Ruder's ex-husband asking him to contact the title company. Fifteen minutes later, Ruder sent Jabri a text message saying that Jabri no longer represented her and should not act on her behalf.

Throughout the process, Ruder retained title to the Property. There was no evidence that her ownership changed from the time she acquired sole title in 2009 through the time the sale failed to close. In fact, on April 30, 2014 (after the sales contract terminated), the divorce court issued an order confirming that the Property was Ruder's sole and separate property.[2]

Other than evidence showing Ruder's ownership, the only evidence concerning title pertained to the cloud on title; that is, evidence of a claim potentially affecting or impairing Ruder's

---

[2] The court subsequently ruled, in June, 2014, that there was no common law marriage and dismissed the divorce proceeding.

ownership interest. Significantly, that cloud existed six months before the Listing Agreement was signed. Thus, it was not just Ruder's ownership that remained unchanged—after the Listing Agreement was signed there was no change to the title's status at all.

In addition, the evidence does not conclusively establish Ruder's claim that the failure to deliver a deed or title policy was "without fault of seller." Ruder did not complete the roof replacement required by the sales contract. And although she claimed to have court documents confirming her right to sell the Property, she provided nothing to the title company. She refused to ask her ex-husband to sign off on the deed. And she told Jabri shortly after the sales contract was signed that she no longer wanted to sell. In short, although she claimed to have title to the Property, she made no effort to address the cloud on that title that precluded the issuance of a title policy and ultimately, the closing.

As a result, Ruder was not entitled to judgment as a matter of law and the trial court did not abuse its discretion in so concluding. We resolve Ruder's fifth, sixth, seventh, eighth, and ninth issues against her.

**C.**      **Issues Ten, Eleven, Twelve, and Thirteen: Was it error to deny Ruder's motion for new trial based on incurable jury argument?**

In her last four issues, Ruder argues the trial court erred by denying her motion for new trial because Appellees' counsel made improper, incurable jury argument as follows:

> [Ruder] knew that there was a way she could get out of the contract, because she talked to her husband. And knew that if she just let this ride out and didn't try to address any issues, that the contract would fall through. And you know why else we know she didn't want to sell? Here we are. 2016, and where is she living? In that same house.

According to Ruder, "Counsel's statement that [she] and her ex-husband colluded to 'walk away' from the sale agreement with the buyer, combined with an innuendo that explained why "Ruder was still living in that same house,' all but doomed any chance the jury would focus on the actual evidence presented at trial." We disagree.

–12–

A complaint of improper jury argument must be preserved by a timely objection and request for an instruction that the jury disregard the improper remark. TEX. R. APP. P. 33.1(a); *Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009). In rare cases, however, the probable harm or prejudice cannot be cured and the improper argument is incurable. *Tex. Employers' Ins. Ass'n v. Haywood*, 266 S.W.2d 856, 858 (Tex. 1954). A complaint of incurable jury argument may be preserved in a motion for new trial even without an objection and ruling during the trial. *Phillips*, 288 S.W.3d at 883; *see also* TEX. R. CIV. P. 324(b)(5).

To rise to the level of being incurable, the complaining party generally must show that the improper argument "strikes at the very core of the judicial process," *Phillips*, 288 S.W.3d at 883, and "by its nature, degree, and extent constitute[s] such error that an instruction from the court or retraction of the argument could not remove its effects." *Living Ctrs. of Tex., Inc. v. Penalver*, 256 S.W.3d 678, 680–81 (Tex. 2008) (per curiam). Examples of incurable arguments are appeals to racial prejudice, extreme unsupported personal attacks on parties or witnesses, and unfounded accusations of manipulating a witness. *PopCap Games, Inc. v. MumboJumbo, LLC*, 350 S.W.3d 699, 721 (Tex. App.—Dallas 2011, pet. denied). The complaining party must show that based on the record as a whole, the offensive argument was so extreme that a "juror of ordinary intelligence could have been persuaded by that argument to agree to a verdict contrary to that to which he would have agreed but for such argument." *Phillips*, 288 S.W.3d at 883

Here, there was no trial objection, but Ruder raised part of her appellate complaint in her motion for new trial. In that motion, she complained about the reference to her residing in the house at the time of trial because this allegedly violated the court's limine order precluding mention of "any post-closing occurrences." But the motion did not complain about Ruder's conversation with her husband or any alleged collusion, so that portion of her issue was not preserved for our review. *See* TEX. R. APP. P. 33.1; TEX. R. CIV. P. 324(b)(5). We therefore

–13–

consider only whether the argument that Ruder still lived in the house was improper, and if so, was of the magnitude of error such that an instruction from the court or retraction of the argument could not cure its effects.

The record does not support a conclusion that the argument was improper. Ruder's attorney asked her on direct examination whether she was still living in the house, and she replied affirmatively. Once she opened the door and the evidence was in the record, it was in for all purposes and a proper subject of closing argument. *See Greenwood Motor Lines, Inc. v. Bush*, No., 05-14-01148-CV, 2017 WL 1550036, at *18 (Tex. App—Dallas Apr. 28, 2017, pet. filed) (mem. op.).[3] Moreover, attorneys may argue reasonable deductions and inferences from the facts in closing argument. *See Anderson v. Vinson Expl., Inc*., 832 S.W.2d 657, 667 (Tex. App.—El Paso 1992, writ denied). And there was evidence suggesting that Ruder did not want to sell. She told Jabri that her ex-husband could get her out of the contract. She increased her demands twice after the sales contract was signed, and when her first demand was refused, told Jabri she no longer wanted to sell. She did not complete the roof repairs, nor did she provide the title company with the documentation she claimed to have that would establish her right to proceed with the sale. Under these circumstances, Appellees' counsel could properly argue that Ruder was still living in the house because she did not want to sell it.

There is also no support for Ruder's contention that the argument violated the court's limine order and the parties' agreement. There is no agreement about excluded topics in the record and the only discussion with the court pertaining to the limine order concerns other matters; therefore, we cannot evaluate the alleged violation beyond what is expressly identified in the order. And the limine order does not expressly preclude mention of Ruder living in the house. Rather,

---

[3] Likewise, even had Ruder preserved her argument about the conversation with her Husband, the details of that conversation were also in evidence without objection.

the limine order prohibits, "Any reference or evidence related to any dispute between plaintiffs and defendant regarding the status of the MLS listing for defendant's property after March 14, 2014."[4]  Ruder maintains that evidence concerning the MLS listing dispute would have informed the jury why she did not sell the house.  While there is no question that the order's exclusion language is broad, it is still not accurate to characterize the complained-of argument as violating of the order.

Moreover, assuming for the sake of argument only that the argument violated the order, Ruder offers no support for her premise that there was no way to "cure the improper argument or correct its prejudicial effect on the jury."  Having reviewed the record, we find no basis for concluding that the argument strikes at the core of the judicial process or that the average juror would have been persuaded to vote differently as a result of the argument.  We thus resolve Ruder's remaining issues against her.

### III.  CONCLUSION

Having resolved all of Ruder's issues against her, we affirm the trial court's judgment.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

160742F.P05

---

[4] There was a dispute about the MLS listing taking the Property off the market after the sale failed to close. Jabri said the listing status was necessary because the sales contract escrow money had not been released, but Ruder ascribed it to a nefarious purpose.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

AZEB RUDER, Appellant

No. 05-16-00742-CV          V.

WILLIAM JORDAN D/B/A WILLIAM
DAVIS REALTY, WILLIAM DAVIS
REAL ESTATE SERVICES, LLC D/B/A
WILLIAM DAVIS REALTY AND
KATHY JABRI, Appellee

On Appeal from the County Court at Law
No. 4, Collin County, Texas
Trial Court Cause No. 004-01346-2014.
Opinion delivered by Justice Whitehill.
Justices Lang and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee WILLIAM JORDAN D/B/A WILLIAM DAVIS REALTY, WILLIAM DAVIS REAL ESTATE SERVICES, LLC D/B/A WILLIAM DAVIS REALTY AND KATHY JABRI recover {his/her/its/their} costs of this appeal from appellant AZEB RUDER.

Judgment entered February 2, 2018.